UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-02780-WYD

ELIZABETH A. LEYBA, on behalf of C.J.L., a minor child,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that

denied a child's claim, through his mother, for supplemental security income.  For the

reasons stated below, this case is reversed and remanded for further fact finding.

I.    INTRODUCTION AND BACKGROUND

Claimant C.J.L., a minor child, was born on January 21, 1997.  (Transcript ["Tr."]

13, Finding 1.)  C.J.L. attends school, although he has been suspended on more than

one occasion.  (Tr. 181, 199, 217.)  He was placed in special education at school, and

was provided with an Individualized Education Program ["IEP"].  (*Id.* 144-157.)

Through his mother, C.J.L. applied for supplemental security income in May

2007, alleging disability due to pediatric bipolar disorder and obsessive compulsive

disorder.  (Tr. 78-84, 101.)  After his application was denied, C.J.L. timely requested a

hearing.  (*Id.* 49-53, 56.)  A hearing was held on July 14, 2009.  (*Id.* 21-48.)  C.J.L. was

12 years old and in the sixth grade when he testified at the hearing.  (*Id.* 13.)

On July 28, 2009, the Administrative Law Judge ["ALJ"] issued a decision finding C.J.L. not disabled. (Tr. 7-20.) The ALJ found that C.J.L.'s biopolar disorder, obsessive compulsive behavior, and cognitive disorder were "severe impairments," but that his impairments did not meet, equal, or functionally equal a listed impairment. (Tr. 13) (citing 20 C.F.R. §§ 416.924(d) and 416.926a.) Specifically, the ALJ found that C.J.L. had no limitations in acquiring and using information, moving about and manipulating objects, or in health and well being. (*Id*. 16-20). He found that C.J.L. had less than marked limitations in attending and completing tasks, interacting and relating to others, and the ability to care for himself. (*Id*.) Because C.J.L. did not have an impairment or combination of impairments that resulted in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, the ALJ determined that C.J.L. was not disabled. (*Id*. 20.)

The Appeals Council denied C.J.L.'s request for review. (*Id*. 1-4). C.J.L. timely requested judicial review, and this appeal followed.

C.J.L., through his mother, makes the following arguments on appeal to this Court: (1) the ALJ failed to properly weigh the opinion of C.J.L.'s treating psychiatrist Salvador Cruz, M.D., (2) the ALJ's rejection of Dr. Cruz's opinion was not supported by substantial evidence, and (3) the ALJ failed to properly weigh the opinion of Dr. Wanstrath, a non-examining consultant, and failed to explain why it outweighed Dr. Cruz's opinion. The Commissioner asserts in response that the ALJ reasonably determined based on all the evidence that C.J.L. was not disabled because he did not meet, equal or functionally equal a listed impairment. I address the arguments below.

II.   ANALYSIS

A.   Standard of Review

An individual under the age of 18 shall be considered disabled for the purposes

of Title XVI of the Act if he has a medically determinable physical or mental impairment

which results in marked and severe functional limitations, and which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of

not less than 12 months (the Duration Requirement).  42 U.S.C. § 1382c(a)(3)(C)(i).

The sequential process of evaluation for a minor child, as set forth at 20 C.F.R.

§ 416.924, requires the ALJ to determine, in this order, (1) whether the child is not

engaged in substantial gainful activity, (2) whether the child has an impairment or

combination of impairments that is severe, and (3) whether the child's impairment meets

or equals an impairment listed in appendix 1, subpart P of 20 C.F.R. Pt. 404 (the

listings). *Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).

If the child's impairment does not meet or medically equal a listed impairment, 20

C.F.R. § 416.926a directs an assessment of whether the impairment is functionally

equivalent to a listing.  Pursuant to 20 C.F.R. § 416.926a(a), functional equivalence will

be met if the child has "extreme" limitations in one domain of functioning or "marked"

limitations in two domains of functioning.  A child will be found to have a "marked"

limitation in a domain when an impairment "seriously interferes with [his/her] ability to

independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).

Day-to-day functioning under a "marked" limitation "may be seriously limited when [the

child's] impairment(s) limits only one activity or when the interactive and cumulative

effects of [the] impairment(s) limit several activities." *Id.* An "extreme limitation" is one

that "interferes very seriously with [the child's] ability to independently initiate, sustain, or

complete activities." *Id.* § 416.926a(e)(3)(i)). It "does not necessarily mean a total lack

or loss of ability to function." *Id.*

A Court's review of the determination that a child is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of

evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487

(10th Cir. 1993).

B.    Whether the ALJ's Decision is Supported by Substantial Evidence

The first issue I address is whether the ALJ failed to properly weigh treating

psychiatrist Dr. Cruz's opinions. C.J.L. received mental health treatment from Dr. Cruz

from June 2007 up to the time of the hearing before the ALJ in July 2009. (Tr. 199-201,

217-23, 251-53). Dr. Cruz also provided medication management, prescribing various

dosages and regimens of Depakote, Zoloft and Clonadine to C.J.L.  (*Id.*)  Dr. Cruz

performed a mental status examination of C.J.L. at almost every visit.  On March 7,

2009, he completed a Child SSI Medical Assessment form where he provided his

opinion on C.J.L.'s mental health limitations as related to child domains.  (*Id.* 251-53.)

Dr. Cruz opined that C.J.L. had marked limitations in acquiring and using information,

attending and completing tasks, interacting and relating with others, moving about and

manipulating objects, and caring for oneself.  (*Id.*) The ALJ stated that he gave "[n]o

weight" to Dr. Cruz's assessment."  (*Id.* 15.)

I find that the ALJ did not properly follow the treating source rules in connection

with his evaluation of Dr. Cruz's opinions.  I note in that regard that an ALJ is "required

to give controlling weight to a treating physician's opinion about the nature and severity

of a claimant's impairments, including symptoms, diagnosis and prognosis, and any

physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic

techniques and if it is not inconsistent with other substantial evidence in the record.'"

*Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted).  "The ALJ

must give specific, legitimate reasons for disregarding" a treating physician's opinion."

*Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90

(10th Cir. 1994)

The first inquiry for the ALJ in determining whether a treating source's opinion is

entitled to controlling weight is whether the opinion is "'well-supported by medically

acceptable clinical and laboratory diagnostic techniques.'"  *Robinson v. Barnhart*, 366

F.3d 1078, 1082 (10th Cir. 2004) (citing SSR 96-2p, 1996 WL 374188, at *2 (quotations

omitted)).  "If the answer to this question is 'no,' then the inquiry at this stage is complete."  *Id.*  "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record."  *Id.*

In this case, the ALJ did not reference the controlling weight standard or specifically address whether Dr. Cruz's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques.  Indeed, he did not even reference the fact that Dr. Cruz was a treating doctor.  Instead, he found only that the opinion "is not supported by the evidence of record, including Dr. Cruz' on [sic] medical records.'"  (Tr. 15.)  He also stated that "Dr. Cruz did not provide any records supporting this assessment or even state why he felt the claimant was so limited."  (*Id.*)

However, Dr. Cruz's report stated medical findings that support his opinion, including "ongoing Behavioral problems", "Hyper psychomotor activity", Impulsivity, Irritability, poor attention span and concentration, not been able to focus on subjects assigned to him".  (Tr. 251.)  A medical doctor's statements about a claimant's condition or impairments "are specific medical findings".  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The ALJ errs in rejecting those opinions in the absence of conflicting evidence.  *Id.* (finding error with the ALJ's decision to reject treating physicians' opinions because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that the claimant's condition deteriorates under stress is a specific medical finding).

Further, "[a] psychological opinion . . . 'may rest either on observed signs or on psychological tests.'"  *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *4 (10th

Cir. Sep. 2, 2005).  In this case, Dr. Cruz's treatment records document significant signs

observed by Dr. Cruz as to C.J.L., including the fact that in April 2009, he was "not

cooperative to formal mental status examination", "[h]e ha[d] poor eye contact", "[h]e

[wa]s electively mute, angry and his affect [wa]s labile and somewhat unpredictable due

to his ongoing impulsive behavior", and "[h]e may require hospitalization until his

behavioral problems are stabilized."  (Tr. 217.)[1]

While the ALJ found that C.J.L. "was doing much better on medication, was

improving, and making steady progress", a review of Dr. Cruz's records reveal

otherwise.  Further, as shown by the two previous paragraphs, the ALJ's findings that

Dr. Cruz's report is not supported by his own medical records and that Dr. Cruz did not

state why he felt C.J.L. was so limited are not supported by substantial evidence.  To

the extent that the ALJ felt that Dr. Cruz did not adequately document why he found

C.J.L. to have marked limitations in the functional domains listed in his report, the ALJ

should have contacted Dr. Cruz for clarification on this issue, rather than simply

discounting Dr. Cruz's opinions.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th

Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1)).  This precise issue was addressed by the

Tenth Circuit in *Daniell v. Astrue*, No. 09-2310, 2010 WL 2588174, at *4 (10th Cir. June

29, 2010).  It held that an ALJ's finding that treating doctors did not give reasons for the

---

[1]  Dr. Cruz's records also noted that C.J.L. was expelled from school on at least two occasions (*id.* 199, 217), C.J.L. was not cooperative or only partially cooperative for some of the sessions; C.J.L. occasionally showed signs of some improvement with usual regression; C.J.L.'s mother gave up custody of C.J.L. voluntarily for a time because C.J.L.'s behavior became unmanageable (*id.* 219); and C.J.L. had behavioral problems at school and home, including defiance to teachers, impulsiveness, restlessness, and inability to focus on things.

severe functional limitations they imposed "triggered the ALJ's duty to seek further development of the record before rejecting their opinions." *Id.*

Since it appears that Dr. Cruz's opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, the ALJ was then required to determine whether the opinion is consistent with other substantial evidence. The ALJ found that it was not, but did not discuss or acknowledge relevant probative evidence in the record that supports Dr. Cruz's opinions. Instead, he selectively discussed evidence that he felt supported his decision, while ignoring other significant evidence. This is improper. *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quotation omitted). In *Carpenter*, the Tenth Circuit found that the ALJ erred when he "summarized the evidence from two mental health practitioners, but he failed to discuss all of the significantly probative evidence relevant to Mrs. Carpenter's mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and the evidence." *Id.*, 537 F.3d at 1269. The ALJ erred in the same way in this case.

Even if the ALJ properly had decided that Dr. Cruz's opinion regarding C.J.L.'s functional limitations was not entitled to controlling weight, this would not allow him to reject his opinion outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Instead, Dr. Cruz's opinion was "'still entitled to deference'" and should have been weighed using all of the relevant factors. *Id.* (quotation omitted).[2] Indeed, the Tenth

---

[2] These factors are set out in 20 C.F.R. § 404.1527(d).

Circuit has indicated that an ALJ errs when he considers only the supportability factor, and does not show that he considered the other factors. *Andersen v. Astrue*, No. 05-4305, 2009 WL 886237, at *6 (10th Cir. April 3, 2009).  The ALJ in this case did not give proper deference to Dr. Cruz's opinion, did not weigh any relevant factors other than the supportability factor, or consider for the record what lesser weight should be given to his opinion.

I now turn to the probative evidence in the record which the ALJ ignored that lends support to the severity of C.J.L.'s impairments as found by Dr. Cruz.  This evidence includes records from Pueblo City School District 60, Dr. Bradley Patterson, Janice H. Schultz, MA, LPC, Spanish Peaks Mental Health Center ["SPMHC"], and school counselor Nicole Vandermark, discussed below.  The ALJ erred in not discussing this evidence.  As noted by the Tenth Circuit, "Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir.1996)).

The School District records showed, among other things, the following: (1) in May 2009, C.J.L. was "non-compliant/refused to do assigned work-ongoing issue", "will not follow adult direction at school", "suspended for 9 days so far", conduct was caused by or had a direct and substantial relationship to C.J.L.'s disability; C.J.L. showed "pervasive opposition, defiant, or non-compliant responses", he was a negative influence on other students, modified school day starting at 10:30 a.m. not working and

school day was further modified to 12:30 to 3:10.  (Tr. 128-129.)  On May 6, 2009,

C.J.L. refused to work and was sent home.  (*Id.* 130.)  On April 14, 2009, a second

school suspension was noted due to non-compliance.  (*Id.* 132.)  Finally, on April 6,

2009, a notification stated that non-compliance has been an ongoing problem for most

of the year, C.J.L. "has been assigned to a self-contained room in recent weeks due to

escalated behavior", "police have been called to intervene during previous incidents",

school worked with social services and C.J.L.'s probation officer due to behavior

problems, and C.J.L. is completing little to no school work.  (*Id.* 133.)  The ALJ did not

discuss any of these reports.  (*Id.* 14.)

Also, school counselor Nicole Vandermark told Disability Determination Services

["DDS"] in October 2007 when it contacted her that:  the school is testing C.J.L. but

having significant problems completing the assessment, mother is not very cooperative,

C.J.L. does not function in the classroom setting at all, C.J.L. has daily blowups and

ends up in her office at which point there is a total of six individuals who work with C.J.L.

on a rotational basis to calm him down and help him understand and complete work,

C.J.L. is very difficult to deal with, C.J.L. does badly at school, and he has never been in

the classroom the whole day.  (Tr. 215.)

Of note, C.J.L. was having the above-described difficulties even though he was

in a special education class and on an IEP.  Placement in a special education program

is a relevant factor in assessing whether a child is disabled at step three, although it "is

not conclusive because of the variability in school districts as to their criteria for special

education placement."  *Briggs v. Massanari*, 248 F.3d 1235, 1238 n. 5 (10th Cir. 2001).

When a child is not even functioning well in that setting, however, this may increase the relevance of that factor. *See Jefferson v. Barnhart*, No. 02-5115, 2003 WL 1904796, at *2 (10th Cir. April 21, 2003).

C.J.L. also treated with SPMHC from August 27, 2008 to January 30, 2009. (Tr. 224-41.) The ALJ did not consider the following probative information from that facility: C.J.L. "is easily irritated and has an irritable attitude", during counseling "he argues and starts to yell over simple questions", he "continues to 'tell little stories", C.J.L. had a panic attack in his foster home (*id.* 225); C.J.L. refused to do "neuropsych evaluation" and would not talk to doctor (*id.*); counselor called by school today because C.J.L. stole two items from peers, C.J.L. intentionally destroyed his glasses, his third pair this year (*id.*); C.J.L. "will not follow directions or rules at home", "often leaves home and does not tell his mother where he is" and "lies about where he is going" (*id.* 226); C.J.L. gets anxiety attacks where he does not know what is happening and is scared by them (*id.* 227); he was taken to the hospital emergency room because he had a panic attack during which he thought his arms were falling off, thought one of his hands was missing and that skin was falling off his legs, other panic attacks were noted (*id.* 231); mother reported C.J.L. continues to have problems in school despite taking Depakote, and that when he is agitated at school he won't budge, they can't get him out of the classroom and he will pull his shirt over his head (*id.* 232); C.J.L. was "manic" for the past month, recently the mother caught C.J.L. shoplifting, she also found burn marks on C.J.L.'s rug, last year C.J.L. set a fire with some other kids (*id.*); and C.J.L. was previously in treatment for issues related to being sexually abused by his biological father (*id.*).

Janice Schultz counseled C.J.L. from April 18, 2007 to July 17, 2007.  While her notes to some extent are illegible, she provided the following probative information: C.J.L. was suspended from school, he verbalizes negativity to point of verbal abuse and disrespect (Tr. 181); C.J.L. has been going to principal's office, but not as much; using slurs at home (*Id.* 184); C.J.L. panics when he opens a book (*id.* 185); and C.J.L. will not stay in his classroom because wants to sleep (*id.* 186).

Brett Valette, Ph.D. performed a consultative evaluation of C.J.L. at the request of DDS.  (Tr. 202-204.)  He diagnosed C.J.L. with oppositional-defiant disorder and major depression.  (*Id.* 203.)  He also noted information relevant to Dr. Cruz's findings, including:  C.J.L. does not want to participate in the evaluation, he cuddles up on the couch, affect is flat, "[w]hen he does speak, he is quite articulate", many times C.J.L. will not look at him or answer the questions, his mom said he is always depressed.  (*Id.*) Dr. Valette concluded, "there are significant family issues, probably some parenting issues going on", "[t]here is a tremendous amount of anger with this boy that is not being addressed at home"; "there is a lot of anger towards authority figures, and the client is stepping in to the territory of conduct disorder with the fire setting, the stealing from stores, stealing from his mom, bullying other kids, and all of this needs to be addressed quickly."  (*Id.*)

The ALJ improperly chose to give "no significant weight" to Dr. Valette's assessment on the basis of C.J.L.'s non-cooperation.  (*Id.* 14.)  However, Dr. Valette made psychological findings and diagnoses even despite C.J.L.'s unwillingness to cooperate.  The ALJ could not discount Dr. Valette's findings based on his own

improper lay judgment that C.J.L.'s failure to cooperate invalidated Dr. Valette's opinions. *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals).

Moreover, the ALJ selectively picked out portions of Dr. Valette's opinion while ignoring the substantive medical findings, and then stated that his report appears "to be consistent with the other evidence of record." (*Id.*) He did not note what other evidence he was referring to, and I do not see how it supports the medical opinion of Dr. Wanstrath relied on by the ALJ. From my review of the record, it appears that while Dr. Valette's opinion is consistent with other evidence of record, the evidence it is most consistent with is that of Dr. Cruz. That is because it supports Dr. Cruz's assessment of significant impairments.

Finally, Bradley W. Patterson, Ph.D. performed testing and an evaluation at the request of DSS. He saw C.J.L. on two occasions, May 26, 2009 and June 1, 2009. (Tr. 242.) On the first visit C.J.L. "proved to be very depressed and generally noncompliant with testing and so testing was discontinued." (*Id.*) After the second visit, Dr. Patterson diagnosed C.J.L. with major depression, oppositional defiant disorder, and a cognitive disorder NOS (primarily secondary to depression and sedating meds) (*Id.* 249.)

Dr. Patterson opined that:

> [t]his is a very seriously depressed boy. The level of his depression, behavioral noncompliance and potentially hazardous running away are deeply concerning. The origin of his depression, oppositionality, underlying anger and interpersonal sensitivity are certainly likely to be rooted in the high dysfunctional and abusive early childhood experiences, including being

sexually molested by his father who subsequently had to go to jail, the reported protracted physical abuse of his mother by his father, his mother's continued psychosocial stress as an unemployed single mother.

(*Id.*)  He recommended continued intensive individual and family counseling with C.J.L.

(*Id.*)  He also recommended long-term monitoring of C.J.L.'s mental health and psychosocial adjustment status particularly given the depth of his depression, oppositionality and potentially hazardous behaviors.  (*Id.* 249-50).

The ALJ discussed Dr. Patterson's report but completely ignored the above opinions.  These opinions appear to be generally consistent with that of Dr. Valette.  Instead, the ALJ selectively picked out findings from the report to justify finding that C.J.L. was not fully credible and to discount Dr. Patterson's medical findings.  (*See* Tr. at 15-16.)  For example, the ALJ pointed to the fact that Dr. Patterson opined that due to C.J.L.'s lack of cooperation and motivation during the testing, the test results could not be presumed to accurately show C.J.L.'s IQ, mental status, or cognitive status."  (*Id.* 15.)  He also stated that Dr. Patterson's notes show that, although C.J.L. was able to cooperate, he chose not to, and that C.J.L. would not take any responsibility for his actions.  (*Id.*)  As to Dr. Patterson's diagnoses of C.J.L., the ALJ noted Dr. Patterson's opinion that "these were the result of domestic violence, lack of mental health care, and poor parenting skills."  (*Id.*)  The ALJ also discounted Dr. Valette's findings based on similar comments.  (*Id.* at 14.)[3]

---

[3]   The ALJ noted in that regard that "Dr. Valette opined that the claimant was very bright but made poor choices", and that Dr. Valette "felt that there were parenting issues as well as medication issues." (*Id.*)

The ALJ concluded that Dr. Patterson's "opinions and observations are found to be consistent with the evidence of record and accorded significant weight." (Tr. 15.) However, it is unclear what opinions he was actually giving significant weight to, as it appears that he relied only on the comments in Dr. Patterson's report which he felt negatively impacted C.J.L.'s credibility.  In that regard, directly after addressing Dr. Patterson's comments noted above, the ALJ then found that C.J.L. was not fully credible.  (Tr. 16.)  To the extent the ALJ discounted C.J.L.'s credibility based on those comments, this was improper.  Dr. Patterson ultimately concluded that C.J.L.'s failure to follow the rules or his work and other noted problems were the result of his severe mental impairments as diagnosed in the report.  Indeed, he stated, "It is quite understandable that he is so depressed, angry and touchy and interpersonally sensitive given this very painful history. It is not surprising that he is oppositional and lacking in task motivation." (Tr. 249.)  Dr. Valette appeared to reach the same conclusion, as did the school.  (*Id.* 203, 128-29.)[4]

The findings of Drs. Patterson and Valette make sense given their diagnosis of oppositional defiant disorder ["ODD"].  ODD "is a condition in which a child displays an ongoing pattern of uncooperative, defiant, hostile, and annoying behavior toward people in authority.  The child's behavior often disrupts the child's normal daily activities, including activities within the family and at school."  http://www.webmd.com/ mental-health/oppositional-defiant-disorder.  Symptoms may include "[a]ctively refusing

---

[4]  As noted earlier, the school found that C.J.L.'s issues at school, including his non-compliance, have a direct and substantial relationship to his disability.  (*Id.*, 128-29.)

to comply with requests and rules." *Id.* Thus, the very behaviors the ALJ chose to rely on to find C.J.L. not credible appear to be tied to C.J.L.'s impairments, a fact which the ALJ clearly ignored. At the very least, if the issue was unclear, the ALJ should have contacted Dr. Patterson and/or Dr. Valette on this issue.

I also find error with the ALJ's decision as he failed to consider whether the ODD and major depression diagnosed by Drs. Patterson and Valette were severe at step two. This is particularly troublesome as to Dr. Patterson as the ALJ stated he gave "significant weight" to Dr. Patterson's report but then failed to address his diagnoses. As noted by the Tenth Circuit, an ALJ errs when he adopts without explanations certain portions of a medical opinion while ignoring others. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ also did not consider the impairment of post traumatic stress disorder diagnosed by Dr. Cruz. The failure to consider these mental impairments is reversible error. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). These other impairments were "significantly probative evidence" that the ALJ had to discuss not only as to their individual severity, but also as how, in combination with all of C.J.L.'s other medically determinable impairments, they impacted C.J.L. *See Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *1 (10th Cir. June 28, 2007).

In *Salazar*, the Tenth Circuit held that an ALJ erred in failing to consider a diagnosis of borderline personality disorder in his disability determination. *Id.*, 468 F.3d at 621-22. It stated that "[i]t is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less." *Id.* The Tenth Circuit also found that the

ALJ's statement that he considered "all the evidence of record" did not satisfy this requirement. *Id.* at 622. It noted that the ALJ's failure to consider the personality disorder was particularly troublesome as it may account for the claimant's abuse of drugs and alcohol and other behavior. *Id.* Similarly, in this case it was particularly troublesome for the ALJ not to have considered the ODD and depression, as they may account for some of the very behavior the ALJ chose to rely on in finding C.J.L. not credible, as discussed previously.

I now turn to the evidence that the ALJ relied on or gave weight to in his decision. This evidence consisted of the evaluation of C.J.L. by Dr. Patterson and the opinion of Dr. James Wanstrath. (Tr. 15-16.) The ALJ also found that the opinion of Dr. Valette was consistent with the other evidence of record, although he stated he did not give significant weight to that opinion. (*Id.* 14.) I previously found that the ALJ did not properly evaluate Dr. Patterson's and Dr. Valette's reports, as he ignored significant portions of their reports and did not consider the impairments they diagnosed. Accordingly, I find that their opinions do not provide substantial evidence to support the ALJ's decision.

I also find that the ALJ erred in giving significant weight to Dr. Wanstrath's Childhood Disability Form, and relying on this for the assessment of the severity of C.J.L.'s impairments at step three. Dr. Wanstrath's report was prepared in November 2007. (Tr. 206-11.) He found that C.J.L. had no limitation in acquiring and using information, moving about and manipulating objects, and in health and physical well being. (*Id.*, *see also* 16-20.) He opined that C.J.L. had less than marked limitations in

attending and completing tasks, interacting and relating with others, and the ability to care for himself. (*Id.*)  The ALJ accepted this assessment and accorded it "significant weight." (*Id.* 20.)  The ALJ then used this assessment to determine that C.J.L. "does not have an impairment or combination of impairments that results in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." (*Id.*)

I find that the ALJ erred in relying on Dr. Wanstrath's opinion as he gave no explanation as to why he believed the report was entitled to significant weight.  He also did not consider the factors relevant to weighing medical source's opinions.  These failures demonstrate that the ALJ ignored the rule that when a "treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Goatcher*, 52 F.3d at 291 (quotations and alterations omitted).

The ALJ also relied on Dr. Wanstrath's report to find that C.J.L. was not disabled at step three despite the fact that the report suffered from the same alleged defect the ALJ relied on to reject Dr. Cruz's opinions; namely, that it provided little support for the opinions given therein.  Indeed, the explanation of findings was not filled out.  (Tr. 211.) While there were extremely brief notes after some of the categories, the notes do not explain how Dr. Wanstrath found that C.J.L.'s limitations were less than marked as compared to marked and/or why C.J.L. had no limitation in certain areas.  The Tenth Circuit has indicated that an ALJ cannot summarily reject a physician's "reports as based on inadequate findings when they are comparable to those reports the ALJ found

sufficiently detailed".  *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985).  Further, the ALJ discounted the fact that while Dr. Cruz may not have provided a detailed analysis for his assessment of C.J.L.'s limitations, he stated medical findings for his opinion which were presumably based on his treatment of C.J.L. for years.  Indeed, the record contains treatment records which document the problems that he reported.

Moreover, it appears that Dr. Wanstrath's opinion was not based on an examination of C.J.L.  "[T]he opinion of an agency physician who has never seen the claimant is generally entitled to the least weight of all."  *Robinson,* 366 F.3d at 1084.  Moreover, "findings of a nontreating physician based upon limited contact and examination are of suspect reliability."  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).  In *Frey,* the doctor's report appeared to be based on the most limited sort of contact and examination.  There was no indication of careful study of Frey's history or prior examinations.  *Id.*  In comparison with the objective tests and measurements described by the treating physicians, the nonexamining physician's report consisted solely of boxes checked on the Commissioner's form to indicate his conclusions.  *Id.*  The Tenth Circuit stated that "[s]uch evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."  *Id.*

In this case, while there was more detail than simply checking off boxes, Dr. Wanstrath's opinion was not supported by a thorough written report.  *See Baker v. Barnha*rt, No. 03-7041, 2003 WL 22905238, at *3 (10th Cir. 2003) (a few handwritten notes from the medical evidence and a statement that the assessment is based on the medical evidence does not constitute a "thorough explanation").  Moreover, there is no

indication that Dr. Wanstrath carefully studied C.J.L.'s history or prior treatment. Indeed, it does not appear that he was provided much of the key medical or other evidence in the case.  While he does not specify the evidence he reviewed, it appears that the only record he reviewed was the report of Dr. Valette.  (*See* Tr. at 209) (noting GAF of 60-65 which was assessed by Dr. Valette.  (*Id*. 203.)  Further, he obviously did not review the assessment by Dr. Cruz or the reports of Dr. Patterson and the SPMHC, since this evidence did not yet exist.  Finally, it does not appear that he reviewed school or other records for C.J.L. noted in this Order.  Indeed, Dr. Wanstrath was under the mistaken impression that C.J.L. was not even assigned to special education.  (*Id*. 208.)

Finally, the Tenth Circuit has indicated that if the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, those "opinions must themselves find adequate support in the medical evidence".  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004).  Here, the ALJ did not point to any evidence that supports Dr. Wanstrath's findings regarding the severity of the functional domains he assessed, and I do not find any in the record.  Accordingly, I find that Dr. Wanstrath's assessment does not constitute substantial evidence to support the ALJ's decision.  *Id.*

In conclusion, I find that the ALJ erred at step two in failing to consider impairments diagnosed by treating psychiatrist Dr. Cruz as well as consultative examiners Drs. Patterson and Valette.  This must be rectified upon remand.  I also find that the ALJ's functional equivalency findings at step three are not supported by substantial evidence, as the ALJ failed to address or consider probative evidence and

because he did not properly weigh the medical evidence.  Accordingly, I find that this case must be remanded for further fact finding.

On remand, I also direct the ALJ to conduct a proper credibility assessment.  On that issue, "[i]f the child claimant is unable to adequately describe his symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition." *Briggs*, 248 F.3d at 1239 (citing 20 C.F.R. § 416.928(a)).  "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Id.*

In this case, the ALJ failed to reference C.J.L.'s mother's testimony at all or to state whether he found her testimony credible.  While he discussed C.J.L.'s testimony briefly (Tr. 16), the entire focus of the discussion was to shore up the ALJ's belief that C.J.L. was not credible because his problems were the result of him simply choosing not to follow the rules or do his work.  (Tr. 16.)  The ALJ also failed to consider the fact that C.J.L. is a child with more than one severe mental impairment, including a cognitive impairment as found by the ALJ.  Thus, the ALJ should have determined whether C.J.L. was able to advocate for himself.  *Simien*, 2007 WL 18472056, at *2.  If not, the ALJ was expressly required to make findings regarding the credibility of his mother's testimony.  *Briggs*, 255 F.3d at 1257.  These errors must be rectified on remand.

Finally, I am not convinced the ALJ adequately developed the record at the hearing during C.J.L.'s testimony as to the inquiries required by the regulations, such as what activities are limited or restricted compared to other children C.J.L.'s age who do not have impairments, whether C.J.L. has difficulty independently initiating, sustaining,

or completing activities, and what kind of help C.J.L. needs to do activities.  *See Simien*, 2007 WL 18472056, at *2 (citing 20 C.F.R. § 416.926a(b)(2)).  The ALJ's questions at the hearing regarding C.J.L.'s difficulties with relevant activities in and out of school were extremely limited.  The record thus needs to be adequately developed on these issues on remand.

III.   UNDERLINE CONCLUSION

Based upon the errors described above, I find that this case must be remanded for further fact finding at steps two and three of the sequential evaluation consistent with this Order.  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 21, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge